IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES MICHAEL PRODIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 20-1372 ) |
| KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 31st day of March 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 23) filed in the above-captioned matter on October 12, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on July 12, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED and the matter is remanded to the Commissioner of Social Security ("Commissioner") for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**I.     Background**

Plaintiff applied for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("Act") on April 25, 2018. (R. 10). He later appeared before an Administrative Law Judge ("ALJ") to pursue the application. (*Id.*). The ALJ decided that Plaintiff was not disabled under the Act, and his decision became the agency's final decision in the matter when the Appeals Council denied Plaintiff's request for review (R. 1). 20 C.F.R.

---

[1]     Kilolo Kijakazi is substituted as Defendant in this matter, replacing former Commissioner Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). This change has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this change.

§ 416.1481.  Plaintiff has challenged the ALJ's decision before the Court.  His and Defendant's motions for summary judgment are pending.

## II. Standard of Review

An ALJ's decision must be supported by substantial evidence.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  That reviewing courts may ensure a decision is supported by such evidence, ALJs must "set forth the reasons for [their] decision[s]."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  If an ALJ's decision is adequately supported and explained, reviewing courts will defer to it even if they "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

ALJs determine disability in five steps.  20 C.F.R. § 416.920.  At the first step, the ALJ must ensure that the claimant is not doing any "substantial gainful activity."  *Id.* § 416.920(a)(4)(i).  Second, the ALJ identifies the claimant's severe medically determinable physical or mental impairments.  *Id.* § 416.920(a)(4)(ii).  The claimant must have at least one.  *Id.*  At step three, the ALJ asks whether the claimant's impairment or a combination of impairments "meets or equals one of [the] listings in appendix 1" of Subpart P of the applicable regulations.  *Id.* § 416.920(a)(4)(iii).  If the claimant's impairments meet the criteria of a listed impairment, the inquiry ends in his or her favor.  *Id.*  If not, it continues.  *Id.*  At steps four and five the ALJ decides if the claimant can return to past work or adjust to other work.  *Id.* § 416.920(a)(4)(iv)—(v).  To decide the inquiries at steps four and five, the ALJ must first formulate the claimant's "residual functional capacity" ("RFC").  *Id.*  The RFC is the claimant's "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a

**regular and continuing** basis." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). If, with his or her RFC, the claimant cannot return to past work and, further, cannot adjust to other work with his or her RFC and vocational characteristics, then the claimant meets the Act's definition of disability. 20 C.F.R. § 416.920(a)(4)(iv)—(v).

### III. The ALJ's Decision

In this matter, at steps one and two, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date and found six severe, medically determinable impairments: (1) degenerative disc disease of the lumbar spine, (2) spondylolisthesis of the lumbar sacral region, (3) lumbar radiculopathy, (4) obesity, (5) sensorineural hearing loss bilaterally, and (6) Meniere's disease. (R. 12). None of Plaintiff's impairments—either singly or in combination—met the criteria for one of the presumptively disabling impairments in the regulations. (R. 13). Therefore, it became necessary for the ALJ to formulate Plaintiff's RFC and decide whether he could return to past work or adjust to other work. For Plaintiff's RFC, the ALJ found Plaintiff could "perform sedentary work" with some limitations, including: having the opportunity to stand for five minutes after twenty-five minutes of sitting & sit for five minutes after every twenty-five minutes of standing and walking; use of a cane; never operating foot controls; occasionally climbing ramps and stairs, balancing, stooping, and crouching; never climbing ladders, ropes, or scaffolds; never kneeling or crawling; never working at unprotected heights, around moving mechanical parts, or operating a motor vehicle; occasional exposure to humidity, wetness, and extreme cold; limitation to environments with only moderate noise; and up to 10% off-task time in an eight-hour workday. (R. 14).

Describing how he assessed Plaintiff's RFC, the ALJ explained that he considered that Plaintiff alleged "disability due to degenerative disc disease, spinal stenosis, Meniere's disease,

hearing loss, depression, and a speech impairment." (R. 15). Plaintiff testified that he had long experienced back pain. (*Id.*). The ALJ considered that and Plaintiff's allegations that two-to-three times each month he was afflicted by inner ear episodes. (*Id.*). These episodes included "nausea, vomiting, vertigo, balance issues, and headaches." (*Id.*). They occurred at random and could last "several minutes to a couple of hours." (*Id.*). Plaintiff addressed them by laying down. (*Id.*). Finally, the ALJ considered Plaintiff's allegations of hearing loss, speech impairment, and depression. (*Id.*).

Turning from Plaintiff's allegations to the objective medical evidence, the ALJ considered Plaintiff's history of lumbar degenerative disc disease. (*Id.*). Plaintiff was prescribed a cane and attended physical therapy, which "improved his overall range of motion but had not reduced his pain." (R. 15—16). The ALJ acknowledged that Plaintiff's obesity had the potential to exacerbate symptoms and limitations arising from Plaintiff's other impairments, but ultimately determined that his obesity did not warrant additional limitations in the RFC. (R. 16). Regarding Plaintiff's inner ear problems, the ALJ considered his "history of bilateral cerumen impactions, sensorineural hearing loss, and tinnitus." (*Id.*). The ALJ took note of Plaintiff's course of treatment, which included taking Meclizine for vertigo and Dyazide for dizziness. (*Id.*). The ALJ also noted that at an August 2017 appointment with one of Plaintiff's ENTs, he reported dizziness and was "mildly unsteady while walking with a cane." (*Id.*). Plaintiff had "already undergone vestibular rehabilitation therapy" and was put on Clonazepam. (R. 306, 16). Despite having his ear canals irrigated, Plaintiff often reported "clogged ears, dizziness, and nausea," and " presented with a balance disturbance and lightheadedness." (R. 16).

After reviewing the objective medical evidence, the ALJ considered the medical opinion evidence in the record. Plaintiff's record included medical opinions provided by Diane Muka,

M.A. (Plaintiff's therapist); Dr. John Horne, M.D. (Plaintiff's physician); Dr. Brooke Bosley, M.D. (Plaintiff's ENT), two State agency consultants, and Dr. Daniel DiCola, M.D.  (R. 17—19).[2]  For Ms. Muka, Dr. Horne, and Dr. Bosley's opinions, the ALJ articulated their persuasiveness, finding Ms. Muka's opinion somewhat persuasive and the other two "less persuasive." (*Id.*).  Then, pulling together Plaintiff's allegations, the objective medical evidence, and the medical opinion evidence insofar as it was persuasive, the ALJ decided that the RFC assessment was "supported by the evidence of record" and showed that Plaintiff was not "limited to the extent alleged." (R. 19).  Considering Plaintiff's RFC and vocational factors, the ALJ determined—with a vocational expert's ("VE") assistance—that Plaintiff was not disabled because he could work as a document preparer, addresser, or press clipping tearer.  (R. 20—21).[3]

### IV. Legal Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to adequately explain why he found Ms. Muka's opinion somewhat persuasive and Dr. Horne and Dr. Bosley's opinions less persuasive.  Plaintiff also argues the ALJ should have included mental limitations in the RFC.  As the Court explains herein, it has found the ALJ's consideration of Dr. Horne and Dr. Bosley's opinions too terse to permit meaningful review.  Therefore, it will order remand for additional administrative proceedings.

Pursuant to 20 C.F.R. § 416.920c—which directs ALJs' consideration of medical opinion evidence and prior administrative medical findings for applications filed on or after March 27,

---

[2] Plaintiff does not challenge the ALJ's consideration and assessment of opinion evidence rendered by the State agency consultants or Dr. DiCola.

[3] The ALJ bypassed the rest of step four—determining whether a claimant can return to past relevant work—because Plaintiff had no past relevant work.  (R. 19).

2017—an ALJ must assess the persuasiveness of medical opinion evidence in the record without affording opinions "any specific evidentiary weight." *Id.* § 416.920c(a). Five factors are relevant to persuasiveness: supportability, consistency, relationship with the claimant, specialization, and "[o]ther factors." *Id.* § 416.920c(c)(1)—(5). ALJs are not required to discuss every factor, however, they must "explain how [they] considered the supportability and consistency factors . . . in [the] determination or decision." *Id.* § 416.920c(b)(2).

The Court is persuaded by Plaintiff's argument that the ALJ's consideration and articulation of Dr. Horne and Dr. Bosley's opinions fell short of what is required.[4] Dr. Horne

---

[4] The Court, however, finds no fault in the ALJ's consideration of Ms. Muka's opinion. The ALJ acknowledged that Ms. Muka opined a number of moderate and marked limitations. (R. 17). Most significantly, Ms. Muka indicated Plaintiff would be at least markedly limited in his ability to "ignore or avoid distractions while working," "work a full day without needing more than the allotted number or length of rest periods during the day," and "manage psychologically based symptoms." (R. 569). Considering Ms. Muka's opinions, the ALJ explained that they fell into two groups: those opinions that were supported by Ms. Muka's own findings but inconsistent with the record as a whole, and those opinions that were unsupported by Ms. Muka's own findings but consistent with other medical evidence in the record. Ms. Muka's opinions that Plaintiff had mild, moderate, and marked limitations in, *inter alia*, avoiding distractions were supported by Ms. Muka's findings that Plaintiff "had difficulty sustaining attention due to pain, was reluctant to ask for help, and had social anxiety that led to avoiding conflict and social situations." (R. 17). Yet, the ALJ found these limitations were inconsistent with other evidence in the record, *e.g.*, mental status examinations showing that Plaintiff had a "normal memory, fund of knowledge, and grossly intact cognition," as well as indicia of "goal directed thought process and normal concentration." (*Id.*).

Conversely, Ms. Muka's findings did not seem to support her opinions that Plaintiff had no limitations in "following one or two-step oral instructions, in understanding and responding to social cues, responding to requests and criticism, and in his ability to interact with others free of irritability and suspicion." (*Id.*). However, the ALJ found that Ms. Muka's opinions in this regard were "consistent with the medical evidence of record as a whole." (*Id.*). Relying on the record as a whole and Ms. Muka's opinions to the extent they were consistent with other evidence, the ALJ found Plaintiff had no limitation in "understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; or in adapting and managing himself." (R. 13, 17). The Court is satisfied with this thorough articulation of the persuasiveness of Ms. Muka's opinion and the explanation of how it fits into the decision. The ALJ clearly explained why Ms. Muka's opinions were not totally persuasive, especially where her most significant opined limitations—pertaining to Plaintiff's ability to

completed a physical assessment wherein he indicated that Plaintiff's impairments would often be severe enough to interfere with the attention and concentration necessary for simple work tasks. (R. 331). He indicated Plaintiff would need to lie down during a workday outside of normal breaks and would require unscheduled breaks approximately every thirty minutes during the workday for a duration of ten to twenty minutes. (*Id.*). He further opined that Plaintiff would likely be absent from work due to his impairments or treatment "[m]ore than four times a month." (R. 332). He concluded with a statement that Plaintiff would "not be capable of gainful employment." (*Id.* (emphasis in original)). The ALJ found Dr. Horne's opinion to be less persuasive. (R. 18). Addressing supportability, the ALJ explained that Dr. Horne's opinions were supported by his own findings, including lumbar tenderness, limited range of motion, slow/stiff movements, and his use of a cane. (R. 19). However, addressing consistency, the ALJ further found that Dr. Horne's opinion was "inconsistent with the medical evidence of record as a whole discussed in detail above," other than Dr. Horne's opinion that Plaintiff could occasionally lift/carry up to ten pounds. (R. 19).

Like Dr. Horne, Dr. Bosley also filled out a physical assessment wherein she too indicated that Plaintiff's impairments would often interfere with attention and concentration necessary for work tasks. (R. 581). For absences, Dr. Bosley opined that Plaintiff would likely be absent three or four times each month due to his impairments or treatments. (R. 582). She indicated "Vestibular neuritis (right)" was Plaintiff's diagnosis. (R. 581). The ALJ found Dr. Bosley's opinion to be "less persuasive" because it was conclusory and lacked "specific vocational limitations explained by medical data points." (R. 19). The ALJ found Dr. Bosley's

---

focus—were concerned. *E.g.*, the ALJ's citation to other evidence in the record showing normal concentration and goal-directed thought clearly demonstrates how the ALJ decided that Ms. Muka's opinions were somewhat inconsistent with the broader record.

opinion lacked consistency in the same way he addressed consistency for Dr. Horne's opinion—by referring to his earlier discussion of the "medical evidence of record as a whole." (*Id.*).

While the ALJ articulated the persuasiveness of both opinions and specifically addressed supportability and consistency pursuant to 20 C.F.R. § 416.920c(b)(2), his discussion of consistency is too cursory to permit meaningful review. The Court does not fault the ALJ for failing to "discuss every piece of evidence in the record." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted). However, the Court is unable to review the ALJ's persuasiveness and RFC findings where, as here, the ALJ failed to "build an accurate and logical bridge between the evidence and the result." *Id.* The Court does not mean to suggest that ALJs may never support their findings by referring to other parts of their decisions where they have already discussed the relevant evidence. It would be inappropriate to categorically exclude that manner of explanation. *See Andrew S. v. Comm'r of Soc. Sec.*, No. CV 18-17212 (ES), 2022 WL 795746, at *2 (D.N.J. Mar. 16, 2022) (citing *Biestek*, 139 S. Ct. at 1157) (explaining that "the substantial evidence standard does not give rise to categorical rules but rather depends on a 'case-by-case' inquiry"). Because reviewing courts read decisions "as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), there are certainly instances when an ALJ's effort to avoid duplicating a discussion of evidence that appears elsewhere could provide the statement of reasons required under the substantial evidence standard. *See Burnett*, 220 F.3d at 119.

However, in this case, the Court is concerned that the ALJ's reference to his discussion of the relevant evidence earlier in his decision fails to bridge the gap between his consideration of the medical opinion evidence and the RFC finding that led to the non-disability determination. Dr. Horne opined that Plaintiff's impairments would often distract him from simple work-related tasks, cause him to take excessive breaks, and result in over four monthly absences. (R. 331—

32). Evidence in the record pertaining to one of Plaintiff's severe medically determinable physical impairments—Meniere's disease—might have been consistent with those limitations. For example, on June 22, 2018, Dr. Horne noted that Plaintiff had episodes of dizziness/vertigo and hearing loss for which he was seeing Dr. Bosley. (R. 365). At that time, Dr. Horne remarked that Plaintiff's balance, speech, and cognitive issues "make him unsuitable for more cerebral occupations." (R. 368). Though her opinion was sparse, Dr. Bosley also opined that absences—three or four per month—would be a problem for Plaintiff, and there is objective medical evidence in the record that might have been found to be consistent with that opinion. For instance, on May 2, 2017, Dr. Bosley saw Plaintiff for dizziness and lightheadedness. (R. 288). His associated symptoms included "earache, tinnitus, hearing loss, nausea[,] and vomiting." (*Id.*). Dr. Bosley ordered a videonystagmography ("VNG") for worsening dizziness. (R. 289). Later that month Dr. Bosley explained to Plaintiff that the results of the testing "showed a true right vestibular weakness." (R. 284).[5] Dr. Horne and Dr. Bosley's treatment

---

[5] A month later, Plaintiff again appeared for dizziness and lightheadedness. (R. 280). Dr. Bosley explained that an MRI following the VNG testing had been normal and decided to refer him to the balance center because he "already failed twice daily Dyazide as well as vestibular rehabilitation." (R. 281). Then, in August 2017, Dr. Joseph Furman saw Plaintiff for dizziness. He noted that Plaintiff's complaints included dizziness with characteristics such as "spinning, moving, lightheadedness and objects spinning." (R. 305). Upon examination, Dr. Furman noted Plaintiff's gait showed "mildly unsteady casual walking while using a cane." (*Id.*). Dr. Furman assessed Plaintiff with "right peripheral vestibulopathy" and recommended "a trial of low-dose clonazepam as he has already undergone vestibular rehabilitation therapy and a trial of Dyazide and sodium restriction." (R. 306). When Plaintiff saw Dr. Bosley in June 2018, he reported balance disturbance episodes up to three times every month. (R. 428). Dr. Bosley summarized that "[u]nfortunately the patient remains symptomatic from his right peripheral vestibulopathy." (R. 429). She indicated Plaintiff would continue with Dyazide because it seemed to help. (*Id.*). Referral to a balance center was discussed but there were concerns about how Plaintiff would get there. (*Id.*). Dr. Bosley prescribed a follow-up in six months and indicated Plaintiff "should also have an audiogram" because "his May 2017 test shows isolated sensorineural hearing loss at 4000 Hz consistent with noise exposure." (*Id.*).

notes in this regard were consistent with Plaintiff's testimony that he experienced two or three dizziness episodes each month that put him off his feet for up to a few hours. (R. 43).

Dr. Horne and Dr. Bosley's opinions—especially regarding breaks and absences—might have been found to be consistent with Plaintiff's testimony and objective medical evidence. However, in finding those opinions were inconsistent with the rest of the record, the ALJ referred to a part of his decision where he only briefly discussed Plaintiff's episodes of dizziness. Earlier in the decision, the ALJ recognized Meniere's disease among Plaintiff's severe medically determinable impairments (R. 12), noted Plaintiff's vertigo, and discussed Plaintiff's treatment with medication and vestibular rehabilitation therapy. (R. 16). The ALJ acknowledged that Plaintiff "report[ed] clogged ears, dizziness, and nausea" and presented with a "balance disturbance and lightheadedness," but further noted that Plaintiff only used his anti-nausea medication occasionally and that his ear canals were frequently irrigated. (*Id.*). Noticeably absent from this review of the relevant evidence is a discussion of the frequency of Plaintiff's episodes and how those would impact Plaintiff's ability to consistently function in a work setting. The evidence that was discussed was not obviously inconsistent with Dr. Horne and Dr. Bosley's opinions that Plaintiff would struggle with breaks and/or absenteeism at work.[6]

The ALJ's oversight in this regard cannot be said to be harmless. Had the ALJ accepted Plaintiff's testimony and the opinions provided by Drs. Horne and Bosley, Plaintiff's absenteeism may have been work preclusive. The VE who testified at Plaintiff's hearing indicated that tolerance for absences would be very low—she informed the ALJ that "absences of one day a month [in] a simple, semi-skilled or unskilled" job would eliminate all work. (R.

---

[6] Although neither Dr. Horne nor Dr. Bosley specifically attributed their breaks/absences opinions to Plaintiff's episodes of dizziness, they were both familiar with challenges arising from, *inter alia*, Plaintiff's dizziness, vertigo, and lightheadedness.

55). Thus, given the relevancy of absences and the opinions' pertinence to the appropriateness of an absence limitation, the ALJ should have provided a more thorough explanation for how he determined the opinions were inconsistent with the record and, therefore, less persuasive. Without more, the Court cannot ensure that the ALJ's decision finding Plaintiff can work full-time, notwithstanding the VE's testimony on absences, is supported by substantial evidence.[7]

## V.   Conclusion

Based on the foregoing, the Court will remand this matter for further consideration of the medical opinion evidence. Because further consideration of the evidence may impact the RFC determination, the Court will leave any other challenges to the RFC—*e.g.*, that it should have included limitations arising from Plaintiff's non-severe mental impairments—to the Commissioner on remand. Accordingly, the Court remands this matter to the Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of Record

---

[7] Defendant maintains that the applicable regulation for reviewing medical opinions requires only "[s]ource-level articulation," that is, ALJs "are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). While that is certainly the case, the new regulations have not upended the established demands of the substantial evidence standard which requires that any rejection of relevant evidence be explicit so as to be reviewable. *See Cotter v. Harris*, 642 F.2d 700, 706—07 (3d Cir. 1981). In this case the ALJ's rejection of most of two relevant medical opinions largely consisted of his brief reference to inconsistency with evidence discussed elsewhere in the decision. However, the discussion he referenced did not decisively contradict the opinion evidence. The Court will not ignore that oversight merely because the ALJ's rejection of the medical sources' opinions is, in some respects, adequate.